UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **TIFFINEY BRITTINGHAM** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | **4:17-CV-01838-KOB** |
| **COMCAST, INC., et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

## MEMORANDUM OPINION

This matter comes before the court on *pro se* Plaintiff Tiffiney Brittingham's motion to vacate the arbitration award entered in favor of Defendant Comcast, Inc., and Comcast's petition to confirm that arbitration award. (Docs. 41 and 43, respectively). For the following reasons, the court will confirm the arbitration award.

**I.    BACKGROUND**

Ms. Brittingham brought wrongful termination and sexual harassment claims against her previous employer, Comcast, and her previous supervisor at Comcast, Defendant Ronald Wilson. (*See* Doc. 1). On August 6, 2018, the court instructed Ms. Brittingham to pursue binding arbitration of her claims as required by her employee agreement with Comcast. (Doc. 27).

On January 4, 2019, Ms. Brittingham submitted her claims to the American Arbitration Association. (Doc. 32). Ms. Brittingham objected to the first two arbitrators that the AAA appointed because she conclusorily alleged that they were not impartial and had unspecified connections to Comcast. Both arbitrators then recused themselves. On January 16, 2019, the AAA appointed a third arbitrator, Daniel J. Thompson, and Ms. Brittingham did "not have any objections" to this third appointment. (Doc. 43-3 at 1).

1

On January 29, 2019, the parties participated in a case management conference call with the Arbitrator. Ms. Brittingham confirmed during the call that she brought claims for sexual harassment under Title VII and wrongful termination under Alabama law. She also clarified that she did not bring any retaliation claims against either defendant. Also, the Arbitrator and the parties agreed on an April 15, 2019 dispositive motions deadline. The Arbitrator documented these points in his Case Management Order dated January 29, 2019. (*See* Doc. 43-4).

On February 6, 2019, the parties jointly submitted a proposed revised Case Management Order that asked to reschedule the Arbitration hearing from June 20 to May 1, 2019. The revised Case Management Order also included revised pre-hearing deadlines and an extended deadline for filing dipositive motions. On February 8, 2019, the Arbitrator approved the parties' revised Case Management Order. (*See* Doc 43-5).

On March 6, 2019, after the close of written discovery, counsel for Comcast deposed Ms. Brittingham. On March 8, 2019, Ms. Brittingham emailed the AAA case administrator stating that she was "unable to participate in arbitration due to mental stress and impairment," and requested that the Arbitrator "make a decision on this case without a telephone conference or an in-person hearing" and "without presenting exhibits or witnesses." (Doc. 43-10 at 6). On March 11, 2019, she renewed her request in a strongly worded e-mail that stated, among other allegations, that the defendants and the Arbitrator were engaged in email tampering, that the case administrator ignored her mental health needs, and that her "PRESENCE IN TRIAL WILL NOT TURN OUT PEACEFULLY!" (Doc. 43-10 at 1–2) (emphasis in original).

On March, 21 2019, Comcast submitted a motion for summary disposition to the Arbitrator. (Doc. 43-5). On March 22, 2019, Ms. Brittingham submitted her response in opposition to Comcast's motion. (Doc. 43-6). On April 2, 2019, the Arbitrator found that Ms.

Brittingham had failed to present any factual evidence to support her claims against Comcast and granted Comcast's motion for summary disposition. (*See* Doc. 43-7).

On the same day that the Arbitrator entered his order, Ms. Brittingham responded to the order in an email to Comcast's counsel and the AAA *pro se* manager. Ms. Brittingham started her email with, "[y]ou are all a piece of s***!" (Doc. 43-9 at 1). She also declared her intention to "take [her] case back to federal court" where she alleged that Comcast would "tie [her case] up for several more years" and "let [its] white collar crimes show up." (*Id.*). Ms. Brittingham did not file a petition to the Arbitrator for a correction, reconsideration, or vacatur of his order.

Instead, Ms. Brittingham filed a "Motion for Judge to Intervene" with the court. (Doc. 33). The court denied the motion. (*See* Doc. 39). The court found that, based on what it could glean from the unclear motion, her "Motion for Judge to Intervene" resembled a motion to vacate the Arbitrator's order granting Comcast's motion for summary disposition based on allegations of fraud and corruption. But her motion did not contain any facts about the arbitration that would allow the court to understand the procedural posture of the arbitration, much less find fraud or corruption by the Arbitrator. So, the court instructed Ms. Brittingham, if she so desired, to file a motion to vacate the Arbitrator's decision supported by specific facts.

On May 1, 2019, Ms. Brittingham filed her motion to vacate the Arbitrator's order granting Comcast's motion for summary disposition. (Doc. 41). Comcast then filed its response and asked the court to confirm the Arbitrator's order. (Doc. 43). The court proceeds with its review of the arbitration award and Ms. Brittingham's allegations of fraud and corruption.

## II.   DISCUSSION

The Federal Arbitration Act, 9 U.S.C. §§ 1–16, controls the court's "very limited" review of an arbitration award. *Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir.

1993). The Act "imposes a heavy presumption in favor of confirming arbitration awards." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (internal quotation marks and citations omitted). And the court *must* confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of [the FAA]." 9 U.S.C. § 9.

Pursuant to 9 U.S.C. § 10(a)(1), the court may vacate an arbitration award "procured by corruption, fraud, or undue means." The Eleventh Circuit applies a three-part test to review whether a party procured an award by fraud: (1) the movant must establish fraud by clear and convincing evidence; (2) the fraud must not have been discoverable by the exercise of due diligence before or during the arbitration proceeding; and (3) the fraud must materially relate to an issue in the arbitration. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir. 1988).

Ms. Brittingham's motion to vacate fails to satisfy the first element of the fraud test because she has not "establish[ed] fraud by clear and convincing evidence." Instead, she mostly makes conclusory allegations of fraud, bias, and corruption, and the facts that she does allege fall well short of clear and convincing evidence of fraud.

First, Ms. Brittingham alleges that she was not advised of a hearing or notified of the Arbitrator's decision. But the record contradicts her because she responded to the Arbitrator's order on the same day that he issued it. (*See* Doc. 43-9). And, even assuming the truth of her allegations, she only asserts that these events show that she "never received a fair chance in this case." (Doc. 41 at 1). But this statement is only conclusory with no factual support and not evidence of fraud.

Ms. Brittingham also alleges "there was no way of receiving a bias [sic] arbitrator on this case" because the first two arbitrators "were associated with Comcast" and Arbitrator Thompson

"was associated to [Ms. Brittingham's] old job [at] AT&T." (Doc. 41 at 1). But she does not explain how the arbitrators were associated to Comcast or AT&T, or show how their association reflects bias in favor of Comcast, especially because the first two arbitrators recused themselves and did not participate in the arbitration proceedings.

Similarly, Ms. Brittingham alleges that the first AAA case manager was "from New York, near Comcast home country [sic] (based out of PA)." (Doc. 41 at 1). But residence in a neighboring state of a party alone is not evidence of fraud or bias in favor of that party.

Next, Ms. Brittingham alleges that she "supplied a notebook thick enough to teach two college courses," which supposedly shows that the Arbitrator could not have had any basis for his decision. (Doc. 41 at 2). Ms. Brittingham has not supplied any of this notebook, and the court cannot speculate about what evidence she submitted in arbitration. Additionally, an allegation of only the *quantity* of evidence submitted in arbitration does not show that an arbitration award was procured by fraud.

Finally, Ms. Brittingham alleges that the Arbitrator ignored her motions to add parties and requests for subpoenas, but she has not provided those motions, requests for subpoenas, or any evidence to support this claim. And, assuming the truth of her allegations, the court cannot speculate as to the reasons why the Arbitrator ignored her requests or jump to the conclusion that ignored motions categorically constitute fraud.

## III. CONCLUSION

For the reasons stated above, Ms. Brittingham has not established with clear and convincing evidence that the Arbitrator's order granting Comcast's motion for summary disposition was "procured by corruption, fraud, or undue means" under 9 U.S.C. § 10(a)(1). Thus, by separate order, the court will **DENY** Ms. Brittingham's motion to vacate the arbitration

award. (Doc. 41). Also, because the court must confirm an arbitration award in the absence of any grounds for vacatur, the court will **GRANT** Comcast's motion to confirm the arbitration award. (Doc. 43); s*ee* 9 U.S.C. § 9.

**DONE** and **ORDERED** this 24th day of July, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE